Please be seated, ladies. Thank you. Your Honor, the second case of the morning is P13-1087, people of the state v. Vincent Holmes. On behalf of Mr. Holmes is Geneva L. Penson. On behalf of the state is Ms. Mary Beth Burns. Okay, ladies, I'm sure you are aware, for the record, there are two of us sitting up here. And the reason for that is Justice Hutchinson is on author of staff attorney, Scott Jacobson, who prepared the briefs for the state in this case. And in light of the fact that he prepared those briefs and is now working for Justice Hutchinson, we felt it would be prudent that you not sit on this panel. We will have another justice listen to the oral arguments. We'll give him the briefs and all the information and have him and or her decide this case with us. So are there any questions concerning that, Ms. Penson? No. Okay. Ms. Burns? Great. You may proceed, Ms. Penson. Thank you. Good morning. May it please the court? Good morning. I represent Mr. Vincent Holmes, who is the appellate in this case. Mr. Holmes was convicted of various forms of aggravated battery, stemming from the July 30th, 2008 shooting, July 31st, pardon me, 2008 shooting of Mr. Robert White, which occurred in Rockford, Illinois. According to the evidence presented by the state at trial, Mr. Holmes had been in a fight with Mr. White earlier in the month. And on the late night, early morning of July, early morning of July 31st, 2008, there was a party going on at the same house where the previous fight had occurred. According to the state's evidence, Mr. Holmes walked up to the house and stood at the bottom of the porch stairs. And Mr. White was on the porch along with a couple other witnesses. There was an argument between Mr. White and Mr. Holmes. And according to the state's evidence, Mr. Holmes then pulled out a gun and shot Mr. White. Now, the first issue that you raise is you raise the issue of ineffective assistance of counsel based upon a failure to impeach with a police report. Yes. Okay. I have this question of you. Where in the report, even if he were impeached to the extent that you felt was proper, where in the report would it show that the deceased was the aggressor? Because I think that you're saying that he didn't impeach and it kind of killed your ability to raise self-defense. I'm not making the claim that the report in and of itself would show that the deceased, he's not deceased by the way. Oh, okay. I'm sorry. The victim. That the victim was the Mr. Holmes testified at trial that he shot Mr. White in self-defense, that Mr. White had rushed at him and that he pulled out a gun thinking Mr. White was going to harm him. So this report, which indicates that at one point, Jamisha Irwin said, Mr. White was at the top of the porch stairs. And then, and then a different report indicates that she told police at some point, Mr. White was at the bottom of the stairs when he was shot makes it more likely that Mr. Vincent Holmes's testimony that he shot Mr. White in self-defense is true. So I'm not saying that this point of impeachment alone would prove Mr. White to have been the aggressor, but it does make Mr. Holmes's testimony that he was the aggressor more likely. Well, you're arguing that as substantive, substantive evidence. I mean, this is impeachment. How, how is it substantive evidence? Hey, we've got Irwin who says one thing and then apparently police report, she's impeached that she said something else that would go to. And if the, if the instruction was given properly to the jury, that would go to her credibility. No other witness has him down the stairs. So how do you, how do you substantively get him to the bottom of the stairs? Because I mean, you could say, don't believe Irwin. Don't believe Irwin that he was at the top of the stairs. Okay. But that doesn't prove that he was at the bottom of the stairs. So you couldn't argue that a trial is substantive evidence. We could argue that Ms. Irwin was lying or at least mistaken when she denied ever having put Mr. White at the bottom of the stairs. And therefore her testimony was not credible, less worthy of belief than Mr. Holmes's testimony. Even given the fact that there were two other witnesses who testified that Mr. White was on the front porch, by all indications, this shooting occurred very quickly. There would have been more room for argument that Mr. Holmes was being truthful and Ms. Irwin either mistaken or untruthful when she denied having put Mr. White at the bottom of the stairs. Isn't the standard that that would create a reasonable likelihood that the outcome would have been different? That is the standard. However, you know, we are not getting into full substantive consideration of Mr. Holmes's claims here. This petition was dismissed at the first stage of post-conviction review. And so all Mr. Holmes had to do was make a claim that had, that was arguably meritorious in the circuit court. And based on the police reports regarding Ms. Irwin's statements to police, he made an arguably meritorious claim in the circuit court. That's all he had to do, not to ultimately prove the merit of his claim or ultimately prove that he was prejudiced, but just to make an arguable claim that merited further post-conviction review. Well, it was arguable that there was deficient performance, but where, I mean, how is it again, arguable that there was prejudice? Because we have Irwin and I think at least one other witness, Muriel? Yes. Putting the victim at the top of the stairs, maybe even another witness, if I think that correctly. But, and then the defendants, the only person who said that the victim came down the stairs. So how's it arguable that if she was impeached, that this, this could have been different? Well, I mean, I think that her credibility on that very point, which is crucial to the defendant's testimony is extremely important at the first stage of post-conviction review. It's arguable that impeaching Irwin could have made an impression on the jury. It could have made an impression on the jury that Mr. Holmes was telling the truth. Again, after all these events all happened very quickly, they were partying, people were drinking, doing whatever. This is an argument that would have been available to Mr. Holmes at trial had his counsel simply perfected his impeachment of Jamesha Irwin during the trial. The next issue you raise is a state of mind of the defendant with respect to the, being attacked. Anywhere in the testimony, is there any evidence that Mr. White had anything to do with all those prior attacks? No, there is, there is no evidence whatsoever that Mr. White had anything to do with those prior attacks and no one is making that allocation. The argument is simply, as Mr. Holmes had pretty eloquently put it during his allocution when he was sentenced, that he had basically been walking around on eggshells. That was his state of mind. He had been attacked so severely and so many times that he was afraid. And that night he was afraid. And no one is attributing that fear to Mr. White, but certainly it goes to Mr. Holmes's state of mind at the time of this offense and otherwise. Wasn't your client asked at trial, why did you have a gun with you? And he was allowed, and this was on direct, so he was allowed to expand on this answer. He talked about things going on in the neighborhood and he was fearful for his safety. I mean, wasn't he given an open door to start talking about, I was attacked before and all this? He didn't bring it up. And now in hindsight being 20-20 and sitting back after he's convicted, thinking about it, now he's raising it in a post-conviction petition saying, I told this to my attorney, but he was given the opportunity at trial to talk about this. I don't believe that single question gave him the opportunity to talk about all of these events. Certainly his trial counsel did not probe any further or seek to elicit any further evidence about what was going on in the neighborhood and why he was afraid. Counsel, after all, knew about these prior attacks. Mr. Holmes had told his counsel about these prior attacks and their effect on his state of mind, but that evidence simply was not elicited at trial. Is there any case law that you can cite that says that the court would have allowed or the court should have allowed him to get into those prior incidents, not involving the victim? Yes. And I've cited, well, I've cited in the briefs a couple of cases. People v. Williams, which is a 1st District case, 45 LF 3rd, 338. And also People v. I believe it's Swarth, which is another 1st District case, 97 LF 3rd, 1005. Both of those cases indicate that the defendant who is asserting self-defense may offer evidence of prior attacks to show his state of mind. There's nothing in those cases that limits the evidence about the prior attacks to by the victim in this case. It's simply, you know, the fact of the prior attacks, the fact that the defendant was previously attacked is admissible to show state of mind. And didn't he testify that the reason why he carried a gun? He testified not that he had been attacked previously, but that there were things going on in the neighborhood. Yes. So, I mean, it's not unlike the cases that you cited allow them to say there was a prior attack, but not to go into the details of the prior attack. Yes. So in this case, he somewhat went into, stated that there was a reason why he carried a weapon, but he didn't go into the detail. He was not asked questions about the detail. What would he, based upon the case law, People v. Wood, the two cases you cited, would he have been allowed to go into detail, would he? But even that general statement that there were things going on in the neighborhood did not convey to the jury that he himself had been victimized by three very severe prior attacks, one of which, at least one of which left him hospitalized. That was never conveyed to the jury, even though, obviously, even though perhaps he may not have been allowed to get into the exact details of what happened during those three prior attacks, just the mere fact that they happened was never conveyed to the jury. There was no evidence that the victim was armed in this case, was there? There was no weapon found on the victim. Your client testified that he thought the victim was going for a weapon, but never saw a weapon. That's right. And the jury found that his actions in self-defense were unreasonable, correct? Well, at least they found him guilty, so I have to assume, yes. Right. So the state's brief points out, how would just the mere, without details, just the mere fact that he had been subject to three prior beatings in the neighborhood have made these unreasonable acts suddenly reasonable on this occasion? Well, I believe that it goes to his state of mind as to whether or not, whether or not he was unreasonable. I mean, you have to, looking at Mr. Holmes in the state that he's in, a person who has been severely attacked three previous times, bears on the reasonable, reasonableness of his belief that he needed to defend himself. The Lynch case, People v. Lynch, the past events concerning prior violation encounters, that case only allows it with the victim, correct? That's correct. And we've made no Lynch argument here. And People v. Sims, the same thing. If it's not involving the victim, it's not going to come in. That is correct, because those are cases that deal with the defendant's state of mind in relation to that particular victim. Why wouldn't it be the defendant's state of mind with respect to that particular victim in this case? Why should it be any different? Because in Lynch and Sims, those prior incidents are being directly introduced to show that the victim was the aggressor. That's not the case here. But doesn't the case law say that you must show, in order to get the specifics of those prior attacks in, you must show that those attacks were with the particular victim as involved in this case? Under Lynch and Sims, yes. Under Wood and the other two cases you cited, it's the same thing. The only thing those cases allowed to say there were prior attacks, or I think it was in Wood, he said, I was beaten before, but the specific details were barred. The court found in the Fourth District that those were irrelevant. Yes, but my argument is that even if, in its discretion, the court barred specific details of the three previous attacks, Mr. Holmes still should have been permitted by his counsel to testify that he had been attacked three previous times. So you're saying that the testimony, there were some things going on in the neighborhood wasn't sufficient? That's very general and very vague. It's not sufficient. I mean, it's saying, oh, I had a gun because I live in a bad neighborhood. That doesn't really, or I was in a bad neighborhood. That doesn't really convey anything to the jury. It doesn't convey what his state of mind was? No, not to the extent that testifying about three previous attacks on him would have. Thank you. Thank you. You'll have an opportunity to reply. Thank you. Ms. Burns. Good morning, Your Honors. May it please the court, my name is Marybeth Burns, and I represent the people of the state of Illinois. We come before you this morning to respectfully ask this court to affirm the circuit court's dismissing the petition at the first stage. As Your Honors are aware, I'm off brief, and so I can't answer questions that are much beyond the briefs. But I think that the major points are actually covered in the briefs. And I think as to the first issue, one of my former colleagues who retired a couple of years ago used to say that every case has a killer fact. In this case, the killer fact is that the purported inconsistency in Jamesha Irwin's testimony is that she told one officer that the victim was up by the door on the porch, and she told another officer that he was on the ground talking to the defendant. What she's not purported to have said to anyone is that the victim came down at the defendant. But the defendant's self-defense theory is based essentially not on the geographic position, but on the fact that it was his perception that the victim was coming at him and that he was going to his waistband for a weapon of some sort. It certainly helps this case, though, if the victim's at the bottom of the stairs as opposed to the top of the stairs. I don't think it helps this case if we don't have any reason to believe that he was at the bottom of the stairs having come at him. The fact that everybody says he's at the top of the stairs smoking a cigarette and she may have told a police officer that he was at the bottom of the stairs doesn't provide what the defendant needs for his self-defense theory, which is the victim coming at him. The fact that he's below, the fact that she told an officer that he was on the ground doesn't say that he came on the ground by coming at the defendant. But wouldn't it make the defendant's case more plausible, his argument more plausible were Mr. Wright at the bottom of the stairs as opposed to the top of the stairs? Only marginally. Because again, I think the point to the defendant's self-defense theory is not that the victim was standing close to him. I think the point to his self-defense theory is that the victim came at him. And Jamesha Irwin did not tell, is not reported to have told either of the police officers that she saw the victim come at the defendant. Again, if the victim is actually smoking a cigarette on the ground rather than at the top of the stairs and they see the defendant coming up and talking to him, if he's already on the ground and doesn't come at him, that doesn't support his self-defense theory. His theory is this guy came at me. And absent some reason to believe that her purported statement would support that, then it's not arguable that having an impeachment would have aided his theory. What about the state of mind issue? I think as to the state of mind issue, the important evidence is the relationship between the victim and the defendant. It was brought out at trial that in the earlier altercation, the victim had struck the defendant and I think it was brought up that it struck him in the face. It is, I think the important element here is that there was a previous altercation and the victim had the better of it. And so to the extent that the defendant's theory is self-defense, he was going to the house where his girlfriend apparently was visiting, residing, whatever, and it's the same place where the earlier altercation occurred. So to the extent that he wants a state of mind shown that he has reason to fear this defendant, I'm sorry, this victim, that was in fact explored at trial because the prior altercation was brought forth. The earlier attacks are not relevant to whether he has reason to fear this particular victim. The jury heard everything it needed to hear about the earlier relationship and the earlier altercation. And so the fact that he had had earlier incidents didn't have anything to do with why he carried a gun going to this house to see his girlfriend. How do you distinguish the cases that your opponent cites? You know, it's funny because you read cases and they simply don't ring true. It's one of these things where it's entirely counterintuitive to think that something that has nothing whatsoever to do with a particular incident or a particular victim has anything to do with the defendant's state of mind. I guess if I were the defense, I would argue that this could have been the difference between a finding of guilty of attempt murder, which is a specific intent crime, versus unreasonable belief in self-defense. And I'm not entirely sure that that's the way they argued this. But I think that to the extent that there's anything arguable, that would be what the argument would be. However, again, my belief would be that to the extent that he had any reason to fear what would happen at this house, that was the reasons for that were presented to the jury and that that would be how the jury would make its determination. Well, the reasonableness of his actions, based upon everything that you've talked about, but also everything that happened to him in the past, shouldn't that all be before the jury? Because there was a self-defense instruction given here. Yes. And so, I mean, it is an issue of reasonableness. And the case law seems to indicate that at least the bare facts that he was subject to three prior altercations were... I don't even know if the trial court would have allowed weapons in, but apparently on all three prior altercations, weapons were used against him. I know at least one of them had a box cutter and... Crowbar, I think, or something. But, I mean, all three had a knife. So, I mean, all three resulted in pretty... Apparently, all three of them resulted in injury. And all three of them, in whatever circumstance or for whatever reason, he was apparently subject to attack. And I guess my concern is how that relates to an incident where he chooses to go armed and he chooses to go armed because we know that he had a history with a specific individual. And all of that was brought before the jury. I'm not entirely sure how relevant his state of mind as to other incidents is versus his state of mind as to this particular victim. And so, I guess that I remain skeptical of the argument that this would be in any way mitigating as to a self-defense instruction as to the specific victim when these were things that were unrelated to the victim and were all several years in the past. None of them were close in time. And, you know, again, his statement that there were things going on in the neighborhood is rather ephemeral. And, you know, as a juror, I would not know what he was talking about when he said things are going on in the neighborhood unless I was aware that it was perhaps a dangerous neighborhood. I don't know. But... Isn't that her point? I'm sorry? Isn't that her point? That that statement was not specific enough. That he was not allowed to get into a more specific statement. I think that's definitely her point. However, and I guess, and I don't want to sound like a broken record, but I think I remain skeptical of the relevance of things that occurred to him even though he was clearly a victim of these things when they were several years prior and they had nothing whatsoever to do with this victim. And when the history of this victim was fully presented to the jury. Well, aren't they relevant under Wood? I mean, under Wood, wouldn't this, at least the bare fact of him being subject to these attacks come in? I mean, it would probably, again, according to Wood and Williams, it would overcome a relevance objection. You know, and again, I guess I understand what Wood states. I am skeptical of the relevance when you're looking at the nature of self-defense and when you're looking at the nature of the jury's determination that he, in fact, intended to kill this person. I'm not entirely sure how things that happened several years before, in fact, are relevant. So I guess my problem is that I'm really skeptical of the holdings in Wood and Williams that I think that they're elevating a state of mind to something that is beyond the facts of a particular case. And part of the problem with that is that would then seem to, in some sense, make relevant or mitigating any prior set of circumstances to some future set of circumstances where somebody who had once been victimized then becomes the aggressor. I don't know. And again, this may be more public policy than a legal argument. I don't know that society is served by saying that if you have been a victim elsewhere, we're going to mitigate your future violence. I don't know that I think that's a helpful way to view things. And I don't know, again, where a jury was fully apprised of the nature of the relationship between the defendant and the victim that any other thing would add to this such that he would be arguably entitled to move on to a stage two in a post-conviction, which, again, is what we're talking about. We're not talking about direct appeal here. We're talking about post-conviction. So I'm not sure that even granting what Wood and Williams say, I'm not sure that I think that they lent enough to this situation to make it arguable that he is at least brought enough to the circuit court to move it to stage two, which is the only question before us now. If you have no other questions, thank you, Your Honors. Thank you. Ms. Pence. As counsel has stated, really the only question before this court is whether Mr. Holmes brought enough to the circuit court to move past the first stage of post-conviction review. I know that I don't need to go through the law of first stage post-conviction review for this court except to say that it only requires a very limited amount of detail to any claim. Excuse me. And there's no need of setting forth a claim in its entirety at the first stage. He just has to make a claim that's arguably meritorious at the first stage of post-conviction review. He has done that. Now, counsel may be skeptical of the holdings of Woods and Williams, but they are the law, and they do apply to this case. And so there's really no reason to question them. No one in the briefs is asking this court to rethink those holdings. Those are first district cases anyway, but to rethink those holdings, Woods and Williams, that's the law of this state, and under those cases, the fact of the prior attacks could come in at trial. Wasn't Williams a little different from the facts here in that in Williams, that evidence was allowed in for the specific purpose to explain why the defendant didn't run away from this group and instead turned and walked toward the group? Not necessarily the reasonableness of his actions in self-defense, but the reasonableness of his actions in not running away. I think it's sort of the same question. I think it's sort of the same question that went through his state of mind in Williams. I think it's sort of the same question. So I don't really know how to answer that. I don't think those two things are all that different, whether he didn't run away rather than confronting those people in Williams. And counsel made one point about the prior attacks, that is, that there was a prior incident between this victim and Mr. Holmes, and that that itself should have been enough to apprise the jury of Mr. Holmes' state of mind rather than getting into these unrelated attacks. However, the jury was instructed as to the prior altercation between Mr. Holmes and Mr. White, that it should only consider that altercation as it went to Mr. Holmes' motive for shooting White. In other words, if Mr. Holmes was there to retaliate against White. The jury was not instructed, basically, that they could consider that as to Mr. White was going to attack him again. So those are really the only points that I wanted to address in rebuttal. I would ask the court to reverse and remand for further post-conviction proceedings. Thank you for your time, Ms. Fentz and Ms. Burns. Thank you so much for your time. It's always a pleasure to hear oral arguments where counsel are so pleasant, and the arguments are so intelligent. So thank you for that today, ladies. Your case will be taken under advisement and a decision will be rendered in due course. Court is now adjourned for the day. Thank you.